The next case will be 08-1416, Applied Medical v. US Surgical. Good morning, Your Honor. May it please the Court. We appeal from a denial of a new trial motion. That's the sole issue before the Court. And that denial was based upon a single legal ruling. A ruling the District Court made repeatedly more than a year prior to the trial. And that was that US Surgical could attempt to prove before the jury that the outer portions disclosed in figure 6 of the patent is relevant to the infringement question. We say that was legal error. That was a clear misinterpretation of this Court's mandate in the prior appeal in this same action. The District Court held that the outer portions could be relevant, were relevant, and definitely held they were relevant after the trial. Even though the parties agree the outer portions are not recited in the claim, they're not part of the identified structure. And this Court made clear in the prior appeal that they are legally irrelevant to the infringement analysis under 112 paragraph 6. Now because the District Court first made this ruling back in 2007, and through an argument that was conducted in December of 2006, it allowed US Surgical to base, to base, not refer or mention, but to base its non-infringement case on the argument that its device has no deformable outer portions. It allowed US Surgical to so violently deviate from the controlling, agreed-upon claim construction. And in fact, the metaphor throughout this trial was that the deformable outer portions were the 9,000-pound gorilla that decides this case. There is overwhelming evidence that this was the theme of their non-infringement case. And they specifically and repeatedly violated the claim construction by litigating the claim construction in front of the jury, including using dictionaries, showing the similarity in words like allowance and permission. And this caused great prejudice to my client, the plaintiff, Applied Medical. Let me just stop you there. There's a structure and an embodiment shown in Figure 6 of the patent. And it's a little unclear to me is if the outer portions didn't deform, it wouldn't be able to float, right? I mean this embodiment couldn't operate as it was intended without the outer portions. Am I wrong about that or right? This is the discussion you and I had the last time this appeal was argued. And the problem is the claim does not claim the entire embodiment. The claim only does not claim the outer portions, deformable or not. We have agreed upon that the outer portions are not part of Claim 6, not Claim 18. Nobody is challenging the claim construction. And the district court and both parties agree that the outer portions you just referred to are not part of the claimed invention. Now, if you have a device where you want to form a seal with the housing as shown in Figure 6, using the elastomeric material attached to the outer portions of the levers as you indicated, yes, they cannot interfere with the flotation of the inner portions. And yes, they would have to be loose enough so that they aren't so taut that they interfere with the motion or the flotation of the inner portions. But unlike the last appeal, we now have agreement that the outer portions are not part of the claim. And so, post-trial, the argument became, oh, but they're still relevant to the way. And by using this argument, they have done violence to the claim construction. They no longer are adhering to the claim construction because now they're deviating from the agreed upon identified structure, which specifically stated that the side-to-side motion is because the ring is in the annular recess, which the ring being a small... you can go beyond the structure in terms of determining the way in which it operates, right? And that's the question. That is the legal question is another reason why I feel the district court violated the mandate. I think the case law is very clear that you do not deviate from the identified structure in trying to show non-infringement. But that has nothing to do with the earlier appeal. That wasn't a question that was before the court in the earlier appeal, was it? No, but the earlier appeal, in our view, applied that basic principle and specifically held and specifically wrote in page 1336. And I think some of the key sentences were cropped out of their brief. You'll note that the sentences I'm about to read to you were removed from the block quotations in the red brief, particularly in the upper right hand of 1336. And the sentence that's missing from the brief, this imports the functionality of the outer portions of the valve into the way in which the ring lever teeth structure commits the inner portions to float. And it continues, the district court did not explain why the outer portion is needed at all for the inner portions to still float. That's a correct statement. You don't even need the outer portions to float. You don't need them. They're not part of the invention. We've all agreed upon that. The district court noted that repeatedly in its opinion that the outer portions are not part of the claimed invention. Why would you preclude someone from discussing what happens to the other parts of the invention when the movement occurs? Is that what they're doing? Isn't that what they're saying, that this occurs because of the way the movement occurs? No. It was much less subtle. That's a little subtle. They didn't just merely discuss it. They weren't simply showing the embodiment. They weren't simply explaining the disclosure. They said that this decides the case. This shows why there's no infringement. So they went to a piece of structure we all agree is not part of the claim, not part of the claim construction, not part of the identified structure, and they said this decides the case. This is the 9,000 pound gorilla that decides the case. And now this case was really only a dispute between two witnesses. I realize it was a five-week trial, but there really was only two witnesses on infringement. Now, they litigated claim construction through other witnesses, inventors, for example, pulling out testimony from 1997 depositions to show what the word float means. Everything they did at trial was to get the inner portions, outer portions, to get the outer portions to be dispositive. And we're down to the fundamental basic principle that how could you possibly rest an infringement argument or a non-infringement argument on a piece of structure we all agree is not part of the claim invention. But, Mr. Ray, if in fact you're looking at the way function, wouldn't you really consider the total object in order to determine what the way is? No. When I'm not quite sure what you mean by object, I'll assume you mean preferred embodiment. Preferred embodiment. No. This court has rich, deep case law explaining how specific you must be in the identification of structure. And the case that I think is really instructive is the assist case discussed at length in my gray brief. In the assist case, they specifically answered that question. And assist says even though communication line 51 is necessary for the embodiment to work and it, of course, is required for the embodiment to work for its intended purpose, it does not belong in the claim, it is not identified structure, and this court reversed the summary judgment because there was reliance on communication line 51. That's a perfect case, and that case goes on to discuss that claims aren't commensurate with the preferred embodiment, that claims can be part of the preferred embodiment. And in this case, we all agree that the claim is not commensurate with the outer portions and the preferred embodiment of figure six. What's really disturbing is that when we went back on remand from this court, we had agreement on what this court held. There was no dispute. And in fact, U.S. Surgical repeatedly wrote and conceded in its brief that this court held that the outer portions were irrelevant to the way. That's at joint appendix A1341-42. They said it again on A1354. And we went before the district court in total agreement of what this court held in the prior appeal, that the outer portions are irrelevant to the way. And only when the district court started pushing on me, the Judge Dyke dissent at oral argument, did they change their tune, write a supplemental expert report discussing the outer portions as part of the way. That led to our motion in limine. After I explained to the judge, hey, they're now violating the Federal Circuit mandate. And what he did, denied all motions in limine and said, let's throw it to the jury. Let the jury decide the materiality of the outer portions to the claim convention. Yeah, but the Federal Circuit also. The upshot of the appeal to the Federal Circuit was we sent it back and we rejected summary judgment. Correct. We said there was a factual issue. But in the process of making that holding, this court held what was material and what wasn't. So the court said there was a genuine issue of material fact. And this court also held that the district court unfairly treated the Sheehan Declaration because Sheehan had no obligation to talk about the outer portions because they're not part of the way. So in the process of holding that there was a genuine issue of material fact, the court went further and said it was improper for the district court to include the outer portions in the way analysis. And it was improper. And whether the court knew it at the time or not, it ended up being correct as the parties all agree the outer portions are not part of the claimed invention. But do you agree, do you not, that in figure six you can't float without including the outer portion? The outer portions are necessary for the float function. No, they're not necessary for the float function. No? No. And the claimed invention and the jury instruction and the claim construction says the flotation is because the ring is inside the annular recess. That's the key part of the claim construction. The way the flotation occurs is in the claim construction. And so if you have a septum which also has outer portions, then yes, it has to be, it can't be so taut that it prevents the flotation. But we all agree the outer portions is not in the claimed invention. The district court agreed with that, wrote that in its new trial order. It's not part of the structure. And not part of the claim construction, not part of the structure, not part of claim 18 anywhere. And that's agreed upon. I'd like to save my time for about five minutes. All right. Mr. Bartlett. Court, please. I'd like to quickly address Judge Crow's last question. The issue had to do with what was decided in the last appeal. The panel took great pains to point out what was decided and what was not decided. Three times in the beginning of the opinion, in the middle of the opinion, at the end of the opinion, the panel said the only issue before us is whether under the district court's adopted claim construction, there is a genuine issue of material fact as to whether the two perform the claim functions in substantially the same way. They said that three times. Then when we moved for a hearing, the court please, Mr. Ray said he agreed with what the panel had said. It was decided on a very narrow ground under the district court's claim construction applied to raise a tribal issue of fact. And now coming to Judge Post's question. There were two experts at page 1337 of the last opinion. This panel noted that Mr. Sheehan, our guy, our expert, had said the outer portions are irrelevant. The panel then noted that Mr. McCarthy, that Sheehan was their expert, McCarthy is our guy. Mr. McCarthy says they are relevant. So their expert says the outer portions are not relevant. It all has to do with how the device slides back and forth in this recess. Was that Mr. Sheehan or Mr. McCarthy? Mr. Sheehan says that their expert says the outer portions are irrelevant and that the device floats because the white ring slides in the slot. Our expert says that the reason it's allowed to float is because the outer portions deform. So that's what you contend was the factual issue before the arrest happened. Yes. But notwithstanding that, we're still left, are we not, with the issue here, even if we agree with you there, whether or not you've agreed that the structure does not include those outer portions. So a question whether or not the way, when you're defining the way, it can go beyond the defined structure, right? Am I right about that? Let me please just finish this reference and I'll answer your Honor's question. When the panel on the last appeal noted that Sheehan had said they're irrelevant and our guy had said they are relevant, the panel said this created a fact question. And that was the fact. They were not irrelevant as a matter of law. If the outer portions had been irrelevant as a matter of law, the panel would not have said there was a fact question created. The panel said they took two different positions and this is for the jury to decide. Now, it's interesting that what we did here, basically Mr. Ray is saying that if a structure is not part of the corresponding structure, it can't be part of any way analysis. That's a rule of law. No case has ever said that. Those words are never found in any case. The cases that he cites are claim construction cases, not way cases. So what we had to do here, as the panel pointed out in the first decision, is first decide what the corresponding structure was. The panel made clear that all the parties were in agreement. The corresponding structure was the white ring, the white letters, and the little T. And the left-hand one is what their expert colored in. It has different colors because he colored them in himself. And then the panel said that the structure is a ring that's capable of moving side to side because it has a diameter less than that of the recess that it holds it. And it's connected to letters with T, which are in turn attached to the sum of them. And that is exactly the claim construction that the district judge gave the jury on four different occasions. So the district judge basically copied the words of the panel in the claim construction that was used. There was never any objection to any jury instruction. There was never any objection to any claim construction. Applied got the jury instructions. Applied wanted. Now, what did we do then? The next question is whether RQ's gimbal device performs the float function, which is the orifice moving back and forth without deformation, in substantially the same way as our gimbal device. I know parenthetically that at JA10651, there's a CD that shows these moving as animations. The panel is very familiar with this in the last appeal, but I find myself the animation to be quite useful in seeing the differences here. But the fact is, what did we do? We then at trial went to the patent to describe the way the ring lever's teeth works in exactly the same words the inventors used in the patent. Inventor Hart said at 2889, column 10 describes how the ring lever's teeth works. So what we did then is we went to column 10 in the patent to describe how the ring lever's teeth works. Mr. Bartlett, we have a very short period of time, but one of the problems that I have with it is the fact that the claim construction that was used at trial didn't differ from the claim construction that was in applied on the appeal, right? It differed. Where was the difference? The original claim construction, the last time we were up here, was that the instrument, the orifice, can move back and forth freely. The panel noticed in the opinion that the judge had not defined the part of the valve that floated as floating without deformation. Remember, the problem to be solved was that in the old devices, the valves are hooked here and here. And if you just push the valve on the edge, it'll deform. So the district judge changed the claim construction in line with what the panel had suggested and said, move back and forth without deformation. Well, I think he's changed the claim construction based on the dissent, not on the majority. No, it's based on the majority. Because basically, the explanation of the outer portions followed the dissent, did it not? No, Your Honor. As a matter of fact, what's quite interesting is the majority below of this panel, two members of this panel, the majority of the court, when the majority described the way the ringleader's teeth works, and this is at 1328 of the May 2006 opinion, the panel itself relied on column 10 in explaining the way the ringleader's teeth works. And the panel said, at 1328, the orifice in the inner portions remains undeformed and a deformation occurs in the outer portions of the valve. So this third panel, when it came time to describe the way the ringleader's teeth work, referred to the deformation of the outer portions. So wait, so you're thinking… But there is a statement in the prior opinion statement, in fact, that the invention would be maintained and sealed against the instrument, not with the housing. And thus, the person would not consider this to be a substantial difference in the two structures for performing the function of supporting the valve to commit it to float relative to the housing. My point, Your Honor, is… Well, let me finish. That's the existence of the inner and outer portions were irrelevant to the float function as described by the Sheehan's Declaration, right? Yes, that's the point that I made to Judge Post earlier, that their expert had said the outer portions were irrelevant. Our expert said they were relevant. And the court said there's an issue of fact. Let the experts testify. As to the relevancy of the outer portion? As to their role in the way that the ringleader's teeth perform the float function. I don't see where we were saying the way in the previous opinion. Well, if we decided the way, then we decided against it at that point, did we not? It went back for trial on the way. But is that a factual determination? Yes. Or a claim construction? No, it's a factual question. This case tends to get confused between claim construction, which, of course, is an issue of law, and the way determination, which is an issue of fact for the jury. It's most interesting… But the legal question, I guess I just got to take enough time to answer my question, which is, if it comes down to the legal question of whether or not in determining the way it operates, you can go outside the structure. Is that not at least one of the issues in the case? And you noted earlier that Mr. Wray doesn't have any cases, or you don't think he has any cases, to support the fact that we can't go outside of the structure. Well, do you have any cases to support your position? The case he cites is cardiac pacemakers, which is Judge Garza's case. And cardiac pacemakers was a case where there was a third monitoring means. And the court then looked in the specs to see if there was a corresponding structure to a third monitoring means, and there wasn't any. So the patent was invalid for lack of indefiniteness. So cardiac pacemakers was a case that found a patent invalid because there was no corresponding structure to the third monitoring means that was set up in the patent itself. It was not a way case. It was a validity case. There's no way case that ever says you can't look at something outside the claim structure. But I'm asking you, even if we agree with that, is there anything that goes the other way? We cited cross-medical. Cross-medical was a case that said that the securing means was a nut. The accused device had a set screw. The set screw would tend to deform the sidewalls of the anchoring part of the patent. A panel of this court looked at the fact that in the accused device, the deformation of the sidewalls, which was caused by a set screw, was different from what would happen when you used a nut, which was the claim device in the patent. So the panel there did go outside. In your view, is the WAIF analysis engraver tank also applicable to an analysis of infringement on the means plus function claims? The court's made clear the engraver tank applies in 112.6 cases. And engraver tank says you have to look at the entire context of the patent. You have to look at the combination of ingredients and how the ingredients work together. And that's basically the heart of our case, the Supreme Court's instruction in engraver tank. It's interesting, I keep coming back to this, that we are told that if we want to know if we infringe, we should look at the patent. We look at count 10 of the patent. We look at count 2 of the patent. It says again and again, it talks about the desired defamation, which is the way the ringleader's teeth works. When the plaintiffs chose to put an exhibit before the jury, their exhibit shows that when you move this back and forth, we have the defamation. They put an exhibit up there that shows that the ringleader's teeth, which is the claimed device, acts on the septum valve. And indeed, the aflexible valve is claimed. But it acts on the septum valve. And the force, instead of going on this orifice, which is like a surgical glove, it's very thin and will stretch. The force is isolated from the orifice that's put here, and this stretches and this collapses. And that is exactly what the panel in this court said in the last appeal when it described how this particular ringleader's teeth device works. So all we did is look where we're supposed to look, because there's a public notice function here. We have to determine how their device works so we can see if our device does it differently. We look at Column 10. Column 10 talks a couple of times about this defamation being necessary, and that's the way it works. We then look at what this panel said, and the panel talked about Column 10. And then we look at their own trial exhibit. And their own trial exhibit shows that the defamation is caused by the claimed corresponding ringleader's teeth structure being pushed out by the instrument. And as Judge Post said at the very beginning, if this was stiff so that this pressure of the instrument on the claimed ringleader's teeth corresponding structure didn't allow it to deform, it wouldn't work. Let me ask you a process question. This client construction that you all have agreed, long agreed to, did that come from the Eastern District of Virginia? Yes. Was that Judge Ellis' client construction? Yes, Your Honor. It did. And we're still sticking with Judge Ellis'. This is at the appendix 3844. And the jury instruction at 3238 that the court gave here is exactly what Judge Ellis gave, and it's exactly what this panel said was the corresponding structure in the last appeal. We have a minute left. Would you say that, in effect, with the change in the claim construction, it now requires non-deforming valve pushing? Yes. Yes, Your Honor. So the claim construction has changed. The claim construction, the panel noted, Your Honors, noted that the first appeal was very broad claim construction. It just said, basically, move back and forth in this claim here. The court observed that the court had not, the district court had not construed valve portions to be, that floated to be valve portions that moved back and forth without deforming. The district judge then picked up on that cue and construed it the way this court had observed he hadn't construed it before. So the claim construction has changed. Yes, sir. And I guess it would be my position the result would be the same if the claim construction had not changed because of the way this operates, the way it functions. However, once you define this as non-deforming, somehow it seems to put into clearer perspective the non-deforming part of the outer portions, which this panel of this court referred to several times in the earlier opinion. Thank you very much. Thank you. With regard to the change in the claim construction, it had no relevance whatsoever to the issue on this appeal. This court can look at the jury instruction at A143 on this valve portions issue. The major point, and I think this appeal has taken on greater significance the more I hear Mr. Bartlett speak, and that is experts do not decide the relevancy of structure to the claimed invention. You don't use experts to add additional structure to a claimed invention. So to say the experts are arguing over relevancy, that should be the red flag. Relevancy is a legal matter. It's either relevant or it isn't. You don't throw it to the jury. Next, I want to talk about a much more fundamental point. The function at issue here is a means for supporting to permit the float. Now, we had this discussion at length at the last argument, particularly with Judge Dyke. Means for supporting to permit the float. They have acknowledged in their brief at footnote 12 on page 34 that the outer portions don't even have any relevancy to the way when it comes to supporting. So how can it be relevant at all to a means for supporting to permit the float? There's only one means clause here with two functions, so it must be the same structure performing both functions. That's a major concession in footnote 12, page 34. No, I understand that they may have conceded that point, but I think their argument would be, but we're not confined in terms of the way to that structure. That's the answer to the question. But that's contrary to law. That is contrary to law, and I want to address another very significant point on that legal point. The use of Graver Tank on 112 paragraph 6, an extraordinary part of their brief where they quote Graver Tank. And then they cite in a footnote, oh, this applies to 112 paragraph 6. And they cite this court's 1986 decision in Texas Instrument in an opinion entitled in the section as a whole. That was reversed a year later, overruled by this court en banc in Penwalt. The whole doctrine of equivalence as a whole analysis doesn't even apply in the doctrine of equivalence anymore, let alone on the 112 paragraph 6 little infringement. So they're asking for a major retrenchment of the law as if we were back in 1983, 1984, 1985. And Judge Newman lost that fight in Penwalt in 1987. That was Judge Newman's opinion that was specifically overruled in Penwalt. So we can't incorporate Graver Tank as a whole, look at the interrelationship of parts under literal infringement. That's blasphemy to a patent lawyer like me. My whole career just got wiped out. We're back in 1982. With that said, I ask this court to connect the dots. Make it clearer then. Apparently, it's not clear enough. But you cannot go beyond the identified structure and circumvent the whole claim construction under the way prong. What an easy way to avoid a controlling claim construction. Thank you, Your Honor.